CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

MAY 03 2017

JULIA C. DUDLEY, CLERK
BY: _____
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION

TERI CRAWFORD, GARRY BROWN, )
LYDIA GREEN, )
LORETTA PENNINGTON, and ) Civil Action No. 3:16-CV-00073
PATRICIA SAUNDERS, )
individually and on behalf of all similarly )
situated individuals, )
) **MEMORANDUM OPINION**
)
Plaintiffs, )
) By: Hon. Glen E. Conrad
v. ) Chief United States District Judge
)
SENEX LAW, P.C., )
)
Defendant. )

Plaintiffs bring this action pursuant to the Fair Debt Collection Practices Act, 15 U.S.C.

§ 1692 et seq. (the "FDCPA"). The matter is currently before the court on defendant's motion to

dismiss. For the reasons stated, the motion will be denied.

## Background

The following summary of the facts, taken from the plaintiffs' complaint, is accepted as

true for purposes of the defendant's motion to dismiss. See Erickson v. Pardus, 551 U.S. 89, 94

(2007). The defendant, Senex Law, P.C. ("Senex"), is a law firm located in Hampton, Virginia.

Senex specializes in assisting apartment complexes in Virginia collect past due rent payments.

Each of the named plaintiffs has been a tenant at a residential property in which the landlord

engaged Senex to facilitate overdue rent collection.

Within five to seven days after being late on his or her rent payment, each named plaintiff

received a written "Notice of Noncompliance" (hereinafter "Notice" or "Notices"). The Notice

appears to be sent from the landlord, as it is on the landlord's letterhead and contains an

electronic signature from the landlord. The Notice instructs the tenant to send payments to the

landlord, and provides the landlord's address. Each Notice lists the amount owed, including late fees and at least $27 in attorney's fees for generating the Notice. The letter specifically states that the landlord has "retained Senex Law, PC and they have already drafted this notice and provided legal advice due to your noncompliance." Compl. Ex. A. The envelope in which the letter is sent notes the name of the relevant apartment complex. However, the return address is from Hampton, Virginia, where Senex is located. The envelope also bears a postal notation indicating that the Notice was sent from Hampton, Virginia. If the amount due is not paid in a timely manner, Senex initiates an unlawful detainer action, often approximately one month after a tenant receives a Notice of Noncompliance.

Plaintiffs allege that, by sending the Notices, Senex is acting as a debt collector, imposing certain disclosure requirements on Senex. The gravamen of the plaintiffs' complaint is that Senex sends dunning letters to plaintiffs without identifying itself as a debt collector and without certain statutorily-required disclosures, in violation of the FDCPA. Specifically, plaintiffs contend that Senex uses the following process to send the Notices to residents who are late on rent payments: (1) the landlord sends Senex a list of accounts for which a debt is allegedly past due; (2) Senex prepares the Notice of Noncompliance on landlord letterhead; (3) Senex affixes the landlord's electronic signature; and (4) Senex then prints and sends the Notice directly to the tenant. Plaintiffs assert that Senex intentionally fails to include the required disclosures when it sends the Notices.

Plaintiffs' complaint alleges one count for violations of the FDCPA. Plaintiffs assert that Senex has violated §§ 1692d, prohibiting harassment or abuse in the collection of debt; 1692e, prohibiting the use of false or misleading representations; and 1692g, requiring certain information about the validity of the debt to be included in the debt collection communications.

The five named plaintiffs also seek to certify a class of present and former tenants of residential properties located in Virginia whose landlords engaged Senex to facilitate overdue rent collection. Plaintiffs seek statutory damages for each class member, compensatory damages, and attorney's fees and costs. The parties have been fully heard on the issues, and the matter is ripe for review.

## Standard of Review

Rule 12(b)(6) of the Federal Rules of Civil Procedure permits a party to move for dismissal of a complaint for failure to state a claim upon which relief can be granted. To survive dismissal for failure to state a claim, a plaintiff must establish "facial plausibility" by pleading "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). In ruling on a 12(b)(6) motion, all well-pleaded allegations in the complaint are taken as true and all reasonable factual inferences are drawn in the plaintiff's favor. Edwards v. City of Goldsboro, 178 F.3d 231, 244 (4th Cir. 1999). However, "[a]t bottom, a plaintiff must 'nudge [her] claims across the line from conceivable to plausible' to resist dismissal." Wag More Dogs, LLC v. Cozart, 680 F.3d 359, 364-65 (4th Cir. 2012) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). The complaint must contain sufficient facts "to raise a right to relief above the speculative level" and "state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 555, 570. In considering a Rule 12(b)(6) motion, the court may consider exhibits attached to or referred to in the complaint. See Phillips v. LCI Int'l, Inc., 190 F.3d 609, 618 (4th Cir. 1999).

## Discussion

"The FDCPA protects consumers from abusive and deceptive practices by debt collectors, and protects non-abusive debt collectors from competitive disadvantage." Yarney v.

Ocwen Loan Serv., LLC, 929 F. Supp. 2d 569, 575 (W.D. Va. 2013) (Moon, J.) (citing United States v. Nat'l Fin. Servs., Inc., 98 F.3d 131, 135 (4th Cir. 1996)). A plaintiff must plead the following to establish a violation of the FDCPA: (1) that the plaintiff is a "consumer" as defined by the FDCPA; (2) that the defendant is a "debt collector" as defined by the FDCPA; and (3) that the defendant engaged in any act or omission in violation of the FDCPA. Id. (citing Withers v. Eveland, 988 F. Supp. 942, 945 (E.D. Va. 1997)).

In the instant case, there is no dispute that plaintiffs are consumers within the meaning of the FDCPA. However, Senex makes two arguments in support of its motion to dismiss. First, Senex asserts that when it sends out the Notices, it is not a debt collector. Instead, it is performing a ministerial function for the landlords, who are the creditors and not subject to the FDCPA. Second, Senex argues that plaintiffs are subject to a heightened pleading standard, which they have not met.

## I.    Debt Collector

The FDCPA applies to "debt collectors," which is statutorily defined as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6). The FDCPA "generally does not regulate creditors when they collect debt on their own account." Henson v. Santander Consumer USA, Inc., 817 F.3d 131, 134 (4th Cir. 2016). The plain language of the statutory definition of debt collector establishes two alternative tests for considering whether a defendant is a debt collector: (1) the principal purpose test and (2) the regularly collects test. Goldstein v. Hutton, Ingram, Yuzek, Gainen, Carroll & Bertolotti, 374 F.3d 56, 61 (2d Cir. 2004). "Thus, the overall structure of § 1692a(6) makes clear that when

assessing whether a person qualifies as a 'debt collector,' [the court] must first determine whether the person satisfies one of the statutory definitions given in the main text of § 1692a(6) . . . ." Henson, 817 F.3d at 136.

It is well-settled that "companies that perform ministerial duties . . . such as stuffing and printing the debt collector's letters" are not debt collectors for purposes of the FDCPA. White v. Goodman, 200 F.3d 1016, 1019 (7th Cir. 2000). Defendant cites to several cases that illustrate when the sender of a dunning letter is not a debt collector for purposes of the FDCPA. For example, in Powell v. Computer Credit, Inc., 975 F. Supp. 1034 (S.D. Ohio 1997), the Court determined that a company was not a debt collector when it sent "ComputerGrams" that listed the creditor's address as the return address and the creditor's billing department as the phone number to contact. Additionally, the letter instructed the debtor to pay the creditor directly, and the text of the letter thanked the debtor for choosing the creditor, Mercy Medical Center. Id. at 1041. In reaching the conclusion that the defendant was not a debt collector, the Court also noted that the creditor "made significant changes to the language of the letter before approving the letter." Id. Similarly, in Fratto v. Citibank, Jablon, & Capitol Credit Agency, No. 94C1817, 1996 WL 554549 (N.D. Ill. Sept. 25, 1996), the Court believed that the fact that the collection agency did not discuss with Citibank the collection process or what steps to take with certain debtors, did not maintain files on the debtors, and was not compensated for anything besides mailing the letters weighed in favor of a determination that the collection agency was merely a mailing service. Also relevant to the analysis was that the letters listed the name and phone number of the creditor, Citibank, as a contact. Id. at *3.

In Laubach v. Arrow Services Bureau, 987 F. Supp. 625 (N.D. Ill. 1997) and Trull v. Lason Sys., Inc., 982 F. Supp. 600 (N.D. Ill 1997), the district courts found significant that the

entities mailing the dunning letters had little or no input in composing the text of the letters and that the companies did not provide any follow-up debt collection services. See also Aquino v. Credit Control Servs., 4 F. Supp. 2d 927, 929 (N.D. Cal. 1998) ("The complaint does not allege that [defendant] had any role in drafting the letter."). Finally, in Randle v. GC Servs., L.P., 48 F. Supp. 2d 835 (N.D. Ill. 1999), the Court considered the text of the dunning letter and the entity to whom the letter directed the debtor to contact, whether the sender also engaged in follow-up collection services after sending the letter, the interaction between the creditor and the sender, the extent the sender was authorized to work out payment plans, and the compensation paid to the sender in determining whether the defendant was merely performing ministerial tasks.

From these cases, it becomes clear that several factors are material to the determination of whether a sender engages in merely ministerial functions, rendering it not subject to the FDCPA, or whether the sender is actively collecting debt for another. These factors include: (1) whether the sender instructs the debtor to contact the sender or the creditor about the debt; (2) whether the sender was substantially involved in the drafting of the letter; (3) whether the sender provides follow-up debt collection services; (4) the extent to which the sender can settle the matter; (5) the compensation structure for the sender; and (6) the extent to which the sender keeps its own records regarding the debtors.

Just as it is well-established that the FDCPA does not apply to ministerial functions, it is similarly well-settled that the FDCPA can apply to lawyers "who 'regularly' engage in consumer-debt-collection activity." Heintz v. Jenkins, 514 U.S. 291, 299 (1995). The question of "whether a lawyer or law firm 'regularly' engages in debt collection activity . . . must be assessed on a case-by-case basis in light of factors bearing on the issue of regularity." Goldstein, 374 F.3d at 62. Factors that bear on whether an entity is regularly engaged in debt collection

activity include:

> (1) The absolute number of debt collection communications issued, and/or collection-related relevant period(s), (2) the frequency of such communications and/or litigation activity, including whether any patterns of such activity are discernible, (3) whether the entity has personnel specifically assigned to work on debt collection activity; (4) whether the entity has systems or contractors in place to facilitate such activity, and (5) whether the activity is undertaken in connection with ongoing client relationships with entities that have retained the lawyer or firm to assist in the collection of outstanding consumer debt obligations. . . . Whether the law practice seeks debt collection business by marketing itself as having debt collection expertise may also be an indicator of the regularity of collection as part of the practice.

Id. at 62-63; see also James v. Wadas, 724 F.3d 1312, 1317-18 (10th Cir. 2013) (adopting the Goldstein factors); Hester v. Graham, Bright & Smith, P.C., 289 F. App'x 35, 41 (5th Cir. 2008) (same).

In Dowling v. Kucker Kraus & Bruh, LLP, No. 99CIV11958RCC, 2005 WL 1337442 (S.D.N.Y. 2005), the Court granted plaintiff's motion for partial summary judgment on the issue of liability when the law firm drafted, prepared, and printed a rent-demand notice that appeared to come from the landlord-creditor. The letter was signed by the landlord, but bore the law firm's file number on the bottom. It had no other marking indicating that any third party was involved. Id. at *2. Upon nonpayment and consent from the landlord-creditor, the law firm would commence civil eviction proceedings after sending the letter. Id. The Court noted that "liability under the FDCPA is focused on those who actually prepare the document." Id. n.1 (citing Romea v. Heiberger & Assocs., 163 F.3d 111, 117 (2d Cir. 1998)). "[D]ebt collectors cannot evade the requirements of the FDCPA merely by having a creditor sign a violative communication." Id. n.2.

Similarly, in Khaytin v. Stern & Stern, Esqs., the defendant law firm "prepared a rent-demand letter and caused it to be sent to Plaintiff, by and through Plaintiff's landlord, that failed to include certain warnings and notices required by the FDCPA." No. 12-CV4169, 2013 WL

5520000, at *1 (E.D.N.Y. Sept. 30, 2013). Noting that the "mere act of printing and disseminating communications in the creditor's or another's name does not implicate the FDCPA," the Court nevertheless held that plaintiff had sufficiently alleged that defendant did "more than merely print or disseminate communications" because the law firm also prepared and sent the letter. Id. at *6 (citing Aquino, 4 F. Supp. 2d at 929, Laubach, 987 F. Supp at 630, Trull, 982 F. Supp. at 605, and Powell, 975 F. Supp. at 1041). The law firm's "involvement extended beyond mere service of notice," and subjected the firm to the requirements of the FDCPA. Id. at 5 (quoting Romea, 163 F.3d at 117). Finally, in Sibersky v. Borah, Goldstein, Altschuler & Schwartz, P.C., No. 99CV3227, 2000 WL 1448635 (S.D.N.Y. Sept. 28, 2000), the Court denied defendant's motion to dismiss when plaintiffs alleged that the defendant sent unsigned notices indicating that payment was due to the landlords. The Court found that plaintiffs had made "specific factual allegations in their amended complaint that defendants regularly prepared and sent three-day notices on behalf of [the landlord], that the notices were printed on the defendants' paper, and that the notices bore abbreviations used internally by the defendants." Id. at *6.

Turning to the plaintiffs' complaint in the instant case, it is clear that some factors suggest that Senex simply performs a ministerial function when sending out the dunning letters. For example, the letters appear on the creditor-landlord's letterhead and instruct plaintiffs to contact the landlord about the debt. Additionally, plaintiffs have alleged no facts indicating that Senex can settle the matter at this initial stage.

On the other hand, certain factors tend to support plaintiffs' argument that Senex is a debt collector when it sends the dunning letters. Plaintiffs have alleged that Senex drafts, sends and administers the Notices. The contention that Senex drafts and sends the Notices is bolstered by the fact that each Notice contains virtually identical text, despite the Notices allegedly coming

from different landlords. It can be inferred from the complaint as a whole that the landlords merely passively provide Senex with the debtor's contact information, and Senex then institutes the collection efforts, which includes everything from sending the initial communications to filing the unlawful detainer actions. Compl. Ex. A. Furthermore, the text of the letter indicates that Senex charges attorney's fees for sending the letter, and is not paid per letter sent. Id. This fact could suggest that Senex is providing more than a ministerial service. Furthermore, Senex concedes that it institutes the unlawful detainer actions, and when it files these civil suits, it acts as a debt collector. Def.'s Br. in Supp. 3 n.4, Docket No. 14.

Senex argues that, under Virginia law, an electronic signature is valid and that supports the proposition that the letters are from the landlords—not Senex. However, in Dowling, the defendant law firm printed the letter and had the landlord physically sign it. Dowling, 2005 WL 1337442, at *2. Nonetheless, the Court determined that the law firm was acting as a debt collector, subject to the FDCPA. In so holding, the Court relied on the fact that the law firm drafted, prepared, printed, and had the letter served on the plaintiff prior to instituting proceedings in housing court. Id. Therefore, the court believes that the more relevant question is whether Senex drafts, prepares, prints, and has the Notices served. Plaintiffs have made this allegation. See Compl. ¶ 17, 171. Furthermore, like Sibersky and Dowling, the Notice contains a small marking indicating that it is not from the landlords. Dowling, 2005 WL 1337442, at *2; Sibersky, 2000 WL 1448635, at *2. Here, the plaintiffs allege that the return post office box address belongs to Senex and not the landlord. In short, it appears that the instant case, as alleged by plaintiffs in their complaint, is more factually similar to the cases in which law firms have been found to be debt collectors than the cases in which the sender of the letter merely performed ministerial functions.

Moreover, looking to several of the factors discussed in Goldstein, plaintiffs have asserted facts suggesting that Senex regularly engages in debt collection activity. First, the complaint establishes a pattern of sending out the Notices within five to seven days of rent being due. Within twenty to forty days thereafter, Senex institutes an unlawful detainer action. These facts indicate a "frequency of such communications . . . including [a] pattern of such activity." Goldstein, 374 F.3d at 62. Second, this pattern of activity and the alleged fact that Senex both drafts the letters and files the unlawful detainer suits suggests that "the activity is undertaken in connection with ongoing client relationships with entities that have retained the lawyer or firm to assist in the collection of outstanding consumer debt obligations." Id. Third, plaintiffs have pled that Senex advertises its practice as a "one stop shop" in terms of collecting delinquent rent. Compl. ¶ 15; see F.T.C. v. Shaffner, 626 F.2d 32, 36 (7th Cir. 1980) ("[A]ppellee may advertise his business as a debt collection agency rather than a law practice, and might employ several employees for the purpose of soliciting debt collection business or contacting debtors to secure payments of accounts; activities which may [fall within the FDCPA]."); Goldstein, 374 F.3d at 62 ("Whether the law practice seeks debt collection business by marketing itself as having debt collection expertise may also be an indicator of the regularity of collection as part of the practice.").

Therefore, from the facts contained in the complaint, the court finds that plaintiffs have stated a claim that, if true, could subject Senex to the FDCPA as a debt collector. In that instance, a consumer need only prove one violation to collect statutory or actual damages. See Spencer v. Hendersen-Webb, Inc., 81 F. Supp. 2d 582, 590 (D. Md. 1999). Plaintiffs have included facts alleging that they were deprived of the required disclosures, in violation of §§ 1692e(11) and 1692g. Discovery may confirm plaintiffs' theory that the landlords merely act as passive

participants, delegating the entire collection of the debt to a third party. Senex might send the dunning letters as part of a service that is so intertwined with the unlawful detainer actions and other debt collection efforts that the letters can fairly be said to be a part of the debt collection activity. On the other hand, discovery and further motions may demonstrate that the landlords draft the letters, that Senex does not keep files on the tenants until it files an unlawful detainer action, that few of the letters result in unlawful detainer suits being filed, or other facts which may support Senex's position that it does not act as a debt collector when it sends the letters. At this juncture, however, the court has determined that plaintiffs have alleged facts that raise their right of relief from possible to plausible. Stated differently, the court simply does not believe that the case can be decided on a motion to dismiss.

## II.    Pleading Standard

Senex contends that to state a claim under the FDCPA, plaintiffs must satisfy the heightened pleading standards articulated in Rule 9 of the Federal Rules of Civil Procedure. Rule 9(b) requires a party alleging fraud or mistake to "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). These "circumstances" are "the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." Harrison v. Westinghouse Savannah River Co., 176 F.3d 776, 784 (4th Cir. 1999). Because plaintiffs allege violations of § 1692e, which prohibits false and misleading conduct, defendant asserts that plaintiffs' claim sounds in fraud, making Rule 9(b) applicable.

Senex correctly points out that several district courts, even those within the Western District of Virginia, require a plaintiff to meet the Rule 9(b) standard when bringing a claim pursuant to the FDCPA. See, e.g., Blick v. Wells Fargo Bank, 3:11CV00081, 2012 WL 1030137

(W.D. Va. Mar. 27, 2012) (Moon, J.). There is a split, however, among district courts across the country. Compare Prophet v. Myers, 645 F. Supp. 2d 614, 617 (S.D. Tex. 2008) (collecting cases applying Rule 8(a) to FDCPA claims), with Neild v. Wolpoff & Abramson, L.L.P., 453 F. Supp. 2d 918, 923 (E.D. Va. 2006) (collecting cases dismissing FDCPA claims for failing to meet Rule 9(b)'s heightened pleading standards). Many district courts have determined that "the position rejecting 9(b)'s application to [the FDCPA] is better reasoned and more widely accepted." Davis v. Wells Fargo Bank, 976 F. Supp. 2d 870, 885 (S.D. Tex. 2013).

In the Eastern District of Virginia, Judge Smith applied Rule 8(a)'s liberal notice pleading requirements to an FDCPA claim, reasoning that § 1692e of the FDCPA differs from fraud in three important ways. See Neild, 453 F. Supp. 2d at 923. First, unlike a claim for common law fraud, the FDCPA does not require a plaintiff to prove actual reliance on a false representation. See id. (citing Nat'l Fin. Servs., 98 F.3d at 139). Second, an FDCPA plaintiff need not establish actual damages. Id. (citing 15 U.S.C. § 1692k(a) which provides for statutory damages in addition to actual damages). Third, and most importantly, the FDCPA does not require the plaintiff to establish scienter. Id.

The FDCPA prohibits certain fraudulent and misleading practices, including the "the use of any business, company, or organization name other than the true name of the debt collector's business, company, or organization." 15 U.S.C. § 1692e(14). Additionally, "dunning letters can violate the FDCPA even if the language in the letters is not overtly or explicitly false . . . or deceptive." Fariasantos v. Rosenberg & Associates, LLC, 2 F. Supp. 3d 813, 820 (E.D. Va. 2014). The FDCPA is considered a strict liability statute. McLean v. Ray, 488 F. App'x 677, 682 (4th Cir. 2012). Consequently, the analysis turns on "the capacity of the statement to mislead; evidence of actual deception is unnecessary." Yarney, 929 F. Supp. 2d at 576. "Thus, knowledge

of a statement's falsity is not a necessary element to establish deception." Id.

Nevertheless, a plaintiff cannot evade the requirements of Rule 9(b) by adding a superficial label of strict liability. Cozzarelli v. Inspire Pharm., Inc., 549 F.3d 618, 629 (4th Cir. 2008). When a plaintiffs' complaint sounds in fraud, Rule 9(b) applies. Id. Allowing otherwise "would undermine one of the primary purposes of Rule 9(b): protecting defendants from the reputational harm that results from frivolous allegations of fraudulent conduct." Id. (citing Harrison, 176 F.3d at 784).

Here, the court believes the complaint "state[s] with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). It contains specific allegations of fact as to each plaintiff. For example, the complaint lists the specific dates that Teri Crawford received a Notice. Examples of the Notices are attached to the complaint, effectively incorporating the contents of the allegedly false representation. See Goines v. Valley Cmty. Servs. Bd., 822 F.3d 159, 166 (4th Cir. 2016) (noting that a district court considers "documents that are explicitly incorporated into the complaint by reference . . . and those attached to the complaint as exhibits" when evaluating a motion to dismiss). Further, plaintiffs assert that the Notice was sent by Senex to Crawford's residence "under the guise" of the landlord, "purportedly signed by a staff member" of the landlord, and failing to "indicate that the Notice was sent by Senex." Comp. ¶ 44, 45. The plaintiffs also plead that the return address was actually that of Senex, not the landlord, despite the letter appearing to originate with the landlord. Compl. ¶ 39. In short, the complaint includes sufficiently particularized facts as they relate to each named plaintiff that implicate the time, place, and content of the misrepresentation, and identify the person making the misrepresentation to satisfy Rule 9(b). Therefore, regardless of whether Rule 9(b) or Rule 8(a) is the proper standard for evaluating a complaint alleging violations of the FDCPA, the court concludes that

plaintiffs have met their burden. Consequently, the court will deny defendant's motion to dismiss.

## III. Class Certification

The named plaintiffs also seek to establish a class of present and former tenants of residential properties located in Virginia whose landlords engaged Senex to facilitate overdue rent collection. Normally, a district court should decide class certification "as soon as practicable." Fed. R. Civ. P. 23(c). "However, compliance with Rule 23 is not to be tested by a motion to dismiss for failure to state a claim." Gillibeau v. City of Richmond, 417 F.2d 426, 432 (9th Cir. 1969). The court will determine class certification when a party moves for or against such certification, which will likely become more appropriate as the litigation develops. See Haley v. TalentWise, Inc., 9 F. Supp. 3d 1188, 1194 (W.D. Wash. 2014) ("The Court will determine class certification when a party moves pursuant to Fed. R. Civ. P. 23."); see also Marx v. Centran Corp., 747 F.2d 1536, 1552 (6th Cir. 1986) (observing that to certify a class in a claim without merit would "promote inefficiency for its own sake"). Moreover, defendant has not sought to strike the class allegations from the complaint, but to dismiss the complaint entirely. Therefore, the issue is not properly before the court.

## IV. Damages

Finally, defendant contests plaintiffs' request for statutory damages and argues that the claim for statutory damages should be dismissed as a matter of law. "In an FDCPA class action, the named plaintiff may recover statutory damages up to $1,000 for himself. For the class as a whole, damages are capped at $500,000 or 1% of the net worth of the defendant, whichever is less." Talbott v. GC Servs. Ltd., P'ship, 191 F.R.D. 99, 101 (W.D. Va. 2000) (Kiser, J.). Plaintiffs' complaint includes a prayer for relief for "statutory damages for all class members of

$1,000 for each violation." Compl. ¶ 178. However, plaintiffs have since conceded that they may recover only actual damages and statutory damages in the amount of $1,000 per named plaintiff and the lesser of $500,000 or 1% of Senex's net worth for the putative class, plus reasonable fees and costs. See 15 U.S.C. § 1692k(a). They seek leave to amend their complaint to cure the defect in the <u>ad damnum</u> of the complaint. See Pls.' Mot. in Opp'n 23 n.4, Docket No. 21.

"[A]n improvident inclusion of a monetary figure in the <u>ad damnum</u> clause should not be grounds for dismissal." <u>Buhro v. Dent</u>, No. 5:13CV81, 2014 WL 460937, at *8 (N.D.W. Va. Feb. 5, 2014). Moreover, pursuant to Rule 15(a) of the Federal Rules of Civil Procedure, the court should "freely give leave when justice so requires." In the Fourth Circuit, a district court may deny leave to amend only when such leave would cause undue prejudice to the opposing party, there has been bad faith on the part of the moving party, or the amendment would be futile. <u>Edwards v. City of Goldsboro</u>, 178 F.3d 231, 242 (4th Cir. 1999). Here, defendant has not alleged that plaintiffs acted with bad faith, that allowing plaintiffs to amend would cause undue prejudice, or that curing this defect would be futile. Accordingly, the court will grant plaintiffs leave to amend the <u>ad damnum</u> clause of their complaint and deny defendant's motion to dismiss the claim for statutory damages.

## Conclusion

For the foregoing reasons, the defendant's motion to dismiss will be denied and plaintiffs will be granted leave to amend the <u>ad damnun</u> clause of their complaint. The Clerk is directed to send copies of this memorandum opinion and the accompanying order to all counsel of record.

DATED: This 3rd day of May, 2017.

_____
Chief United States District Judge