IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
Charlottesville Division

| | | |
|---|---|---|
| TERI CRAWFORD, GARRY BROWN, LYDIA GREEN, LORETTA PENNINGTON & PATRICIA SANDERS, individually and on behalf of all persons similarly situated Plaintiffs, | ) | Civil Action No. 3:16-cv-00073 |
| | ) | MEMORANDUM OPINION & ORDER |
| v. | ) | |
| SENEX LAW, P.C., Defendant. | ) | By: Joel C. Hoppe United States Magistrate Judge |

This closed case is before the Court on a "Motion to Intervene for Purposes of Partial Relief from Protective Order," ECF No. 140 ("Mot."), filed by Plaintiffs in *Lord v. Senex Law*, No. 7:20cv541 (W.D. Va. filed Sept. 9, 2020), which is pending in the Roanoke Division of this Court. The Motion is a narrow request for relief asking the Court to interpret and, if necessary, to modify, a stipulated Protective Order governing in perpetuity "the use, handling, and disclosure of all documents, testimony or information produced or given in [the *Crawford*] case that are designated to be subject to th[at] Order," Prot. Order ¶ 1 (Sept. 12, 2017), ECF No. 70; *id.* ¶ 14 ("This Order shall remain binding after the conclusion of this case unless otherwise ordered by the Court, and the Court shall retain jurisdiction over all parties bound hereby for the purposes of enforcing this Order."). *See* Br. in Supp. of Mot. ¶¶ 1–2, 6–10, ECF No. 141; Supp'l Br. in Supp. of Mot. ¶¶ 1–2, 6–10, ECF No. 155.

More specifically, several attorneys for Plaintiffs in *Lord* were also counsel of record for Plaintiffs in *Crawford*, and therefore had access to certain materials that Defendant Senex Law produced in pretrial discovery in *Crawford* and designated "confidential" under the stipulated Protective Order. *See* Br. in Supp. of Mot. ¶¶ 6–7. Those materials contain "information

regarding [Senex's] business practices." *Id.* ¶ 2 ("Pursuant to the Protective Order, defendant Senex designated all information regarding its business practices to be confidential."); *see* Prot. Order ¶ 2 (citing Fed. R. Civ. P. 26(c)(1)(G)). The stipulated Protective Order broadly prohibits the *Crawford* parties and their attorneys of record from "us[ing], directly or indirectly," all Confidential Materials or Confidential-Attorneys Eyes Only ("AEO") Materials "and all information derived therefrom . . . for any purpose whatsoever other than solely for the discovery and/or the preparation and trial of [the *Crawford*] action in accordance with this Order." Prot. Order ¶ 4. The *Lord* Plaintiffs filed this Motion because their legal team includes attorneys who did not represent Plaintiffs in *Crawford* and who therefore "were not privy to the information" that Senex designated "confidential" during pretrial discovery in *Crawford*. Br. in Supp. of Mot. ¶ 6. Thus, "in the absence of prior written permission from [Senex] or an order by the Court," Prot. Order ¶¶ 6, 9, the attorneys who were involved in *Crawford* cannot "disclose" their mental impressions of any "information derived" from Senex's confidential business materials to their new co-counsel in *Lord*, *id.* ¶¶ 4, 6, 9. Br. in Supp. of Mot. ¶¶ 6–8, 10. Senex opposes the *Lord* Plaintiffs' request. Br. in Supp. of Mot. ¶ 10; *see generally* Def.'s Br. in Opp'n to Mot. 1–10, ECF No. 143; Def.'s Supp'l Br. in Opp'n to Mot. 1–11, ECF No. 156.

For the reasons explained below, the Court finds that it has authority to grant the relief requested, Prot. Order ¶¶ 6, 9, 14; *see Public Citizen v. Ligget Grp., Inc.*, 858 F.2d 775, 782–83 (1st Cir. 1988); Fed. R. Civ. P. 26(c)(1)(G), and that it is proper to issue an Order allowing the attorneys who are counsel of record for Plaintiffs both in *Crawford* and in *Lord* to share with the other Plaintiffs' attorneys in *Lord* their mental impressions of information derived from materials that Defendant Senex Law designated "Confidential" under the stipulated Protective Order and produced during pretrial discovery in *Crawford*. *See* Prot. Order ¶¶ 6, 9; Fed. R. Civ. P. 1

("These rules . . . . should be construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding."). This Order shall not authorize the distribution or use of the underlying "Confidential Materials" or "Confidential-AEO Materials" that Senex previously produced in pretrial discovery, Prot. Order ¶¶ 4–5, 6, 9, or of any written "summaries, extracts, compilations, notes, or other attorney work product containing Confidential Materials and/or Confidential-AEO Materials (with the exception of drafts of pleadings filed with the Court)," that Plaintiffs' counsel returned to Senex or destroyed after the conclusion of the *Crawford* case, *id.* ¶ 13.

I. Background

In October 2016, Plaintiffs Teri Crawford, Garry Brown, Lydia Green, Loretta Pennington, and Patricia Saunders filed a putative class action complaint against Defendant Senex Law, P.C., alleging violations of the Fair Debt Collections Practices Act ("FDCPA"), 15 U.S.C. §§ 1692–1692k. *See* Compl., ECF No. 1. The parties started discovery in late February 2017. *See* ECF Nos. 31, 34. That September, the Honorable Glen E. Conrad entered the parties' stipulated Protective Order "govern[ing] the use, handling, and disclosure of all documents, testimony or information produced or given in th[e] case that are designated to be subject to this Order." Prot. Order ¶ 1. "This Order shall remain binding after the conclusion of [the *Crawford*] case, and the Court shall retain jurisdiction over all parties bound hereby for the purposes of enforcing this Order." *Id.* ¶ 14. The *Crawford* case was voluntarily dismissed with prejudice in December 2018 after the parties settled Plaintiffs' claims.[1] *See* ECF Nos. 136, 138, 139.

---

[1] A copy of the stipulated Protective Order is incorporated by reference and attached as an exhibit to the parties' executed Settlement Agreement & Release. Def.'s Br. in Opp'n to Mot. 4, 7 (citing *id.* Ex. 1, at 2 ¶ 1.B.ii); *see generally* Def.'s Br. in Opp'n to Mot. Ex. 1, at 2, 14–22, ECF No. 152-1. The Agreement itself, "the terms of the Agreement, the settlement negotiations, and the settlement provided for [there]in" are made "confidential" under a separate provision of the Agreement. Def.'s Br. in Opp'n to Mot. 4 (citing *id.* Ex. 1, at 3 ¶ 1.F); *see also id.* Ex. 1, at 3 ¶ 1.F.i ("The Parties may provide a copy of this

The stipulated Protective Order provides that "[a]ny documents, testimony or information submitted . . . which [are] asserted in good faith by the producing party or by any other party to contain or constitute information protected by" Rule 26(c)(1)(G) of the Federal Rules of Civil Procedure, "or other provision of law," would be "segregated from other information being submitted" and expressly designated "CONFIDENTIAL or CONFIDENTIAL-ATTORNEY'S EYES ONLY." Prot. Order ¶ 2. Rule 26(c)(1)(G) authorizes federal courts, on motion and "for good cause" shown, Fed. R. Civ. P. 26(c)(1), to issue protective orders "requiring that a trade secret or other confidential . . . commercial information not be revealed or be revealed only in a specified way," Fed. R. Civ. P. 26(c)(1)(G). During discovery in *Crawford*, "Senex designated all information regarding its business practices to be confidential." Br. in Supp. of Mot. ¶ 2. Thus, those confidential materials "and all information derived therefrom (including but not limited to all testimony, deposition or otherwise, that refers, reflects, or otherwise reflects or otherwise discusses any such materials), shall not be used, directly or indirectly, by any person . . . for any purpose whatsoever other than solely for the discovery and/or the preparation and trial of [the *Crawford*] action in accordance with this Order." Prot. Order ¶ 4.

The prohibition on "us[ing], directly or indirectly," any confidential "materials . . . and all information derived therefrom," *id.* ¶ 4, includes "disclos[ing]" such information "to any person other than . . . the parties, their attorneys of record, and those attorneys' support staff . . . who perform[ed] work tasks related to [the *Crawford*] case," *id.* ¶ 6(i). *Accord id.* ¶ 9 ("Confidential-AEO Materials shall not be disclosed to any person other than counsel of record in this case . . . ."). But the prohibition on "disclosing" such materials, *id.* ¶¶ 6, 9, and any "information derived therefrom," *id.* ¶ 4, is not absolute. *See id.* ¶ 8. Rather, the parties agreed that it was the default

---

Agreement and/or describe the terms and conditions of this Agreement within any lawsuit before a United States court of competent jurisdiction only in response to a Court order to that effect.").

rule "in the absence of prior written permission from the designating party or an order by the Court[.]" *Id.* ¶ 6; *accord id.* ¶ 9 ("[I]n the absence of prior written permission from the designating party or an order by the Court[,] Confidential-AEO Materials shall not be disclosed to any person other than counsel of record in this case . . . ."). If the designating party consents or the Court so orders, then confidential materials and information derived therefrom may be "disclosed to a[] person other than" attorneys of record and their support staff who worked on the *Crawford* case.[2] *See id.* ¶¶ 6(i), 8; *accord id.* ¶ 9 (providing the same for "Confidential AEO-Materials"). As noted, the parties and attorneys in *Crawford* agreed that the stipulated Protective Order "shall remain binding after the conclusion of this case unless otherwise ordered by the Court, and [that] the Court shall retain jurisdiction over all parties bound hereby for purposes of enforcing this Order." *Id.* ¶ 14.

In September 2020, Plaintiffs Jennifer Lord, Ebony Reddicks, and Toniraye Moss filed a putative class action complaint against Defendant Senex Law, P.C., also alleging violations of the FDCPA. *Lord*, No. 7:20cv541, Compl., ECF No. 1; *see* Br. in Supp. of Mot. ¶¶ 4–5. That action is proceeding in the Roanoke Division and was stayed until mid-January 2022.[3] *See Lord*, No. 7:20cv541, ECF Nos. 49, 51, 54, 56. The *Lord* Plaintiffs' "Motion to Intervene" asks this

[2] The parties separately agreed that the actual "Confidential Materials and Confidential-AEO Materials produced in discovery in this case shall not be used in any other legal . . . proceedings unless requested and produced according to the rules of discovery and rulings of the court in such other proceeding." Prot. Order ¶ 5. Notably, this provision does not contemplate an exception based on the producing party's prior written consent or an order issued by the Court in the *Crawford* case. Thus, the Order issued today in this case will not affect discovery or pretrial proceedings in the *Lord* case, and any disputes over discovery served in *Lord* will be resolved as appropriate in that case. *See JTH Tax, Inc. v. H&R Block E. Tax Servs., Inc.*, 359 F.3d 699, 705 (4th Cir. 2004) ("When a district court's decision is based on an interpretation of its own order, our review is even more deferential because district courts are in the best position to interpret their own orders.").

[3] On January 10, 2022, the Honorable Michael F. Urbanski denied Senex's motions to stay and to permit an interlocutory appeal of his order denying in part Senex's motion to dismiss. *See* ECF No. 32, 37, 53, 54. The Honorable Robert S. Ballou will oversee pretrial matters in the *Lord* case, including any discovery issues. ECF No. 56.

Court to interpret and, if necessary, to modify, the *Crawford* Protective Order "so that their full legal team may be apprised and aware of the [business] information" that Senex designated as "confidential" and produced during pretrial discovery in this case. Br. in Supp. of Mot. ¶ 7; *see id.* ¶ 2 ("Senex designated all information regarding its business practices to be confidential."). They argue that the Court has express or inherent authority to grant the relief requested, *see* Br. in Supp. of Mot. ¶ 7 (citing Fed. R. Civ. P. 60(b)); Supp'l Br. in Supp. of Mot. ¶¶ 4–10 (citing *Public Citizen*, 858 F.2d at 782; *Dushkin Pub'g Grp., Inc. v. Kinko's Serv. Corp.*, 136 F.R.D. 334, 336 n.5 (D.D.C. 1991) (citing Fed. R. Civ. P. 24)), and that doing so "will promote efficiency [because] it will eliminate the need for duplicative discovery just so that the *Lord* plaintiffs' legal team will be able to know what most of them already know," Br. in Supp. of Mot. ¶ 8; *see also* Supp'l Br. in Supp. of Mot. ¶ 1. Importantly, the *Lord* Plaintiffs are not asking that their attorneys who were involved in *Crawford* be allowed to use the underlying confidential materials in *Lord*, or to give those materials to their new co-counsel in that case. *See* Br. in Supp. of Mot. ¶ 7; Supp'l Br. in Supp. of Mot. ¶ 1. Rather, they want their attorneys to be able to discuss their recollections or mental impressions of information derived from those materials with their *Lord* co-counsel while Plaintiffs' legal team develops their litigation strategy and drafts requests seeking discovery relevant to the claims and defenses in that case. Br. in Supp. of Mot. ¶¶ 6–8; *see also* Def.'s Supp'l Br. in Opp'n to Mot. 8 (recognizing that the *Lord* Plaintiffs are asking for leave to "speak with co-counsel about confidential material from *Crawford*," and are "not actually seeking discovery material [that is] prohibited from disclosure" in this case).

Senex opposes the *Lord* Plaintiffs' request. *See generally* Def.'s Br. in Opp'n to Mot. 1–10; Def.'s Supp'l Br. in Opp'n to Mot. 1–9. It argues that this Court does not have authority to grant the relief requested, *see* Def.'s Br. in Opp'n to Mot. 5–6; Def.'s Supp'l Br. in Opp'n 1, 3–6,

and that, even if it did, granting such relief in this case would be "inequitable and inappropriate," Def.'s Br. in Opp'n to Mot. 5, for numerous reasons. *See generally id.* at 5–9; Def.'s Supp'l Br. in Opp'n to Mot. 6–9. For example, Senex asserts that granting relief would: (i) mean "the *Lord* Plaintiffs are automatically given access to confidential and inadmissible material that is . . . far outside the scope of discovery that would otherwise be allowed in *Lord*," Def.'s Br. in Opp'n to Mot. 6–7; *see also* Def.'s Supp'l Br. in Opp'n to Mot. 4 n.2; and (ii) permit litigation conduct that "would otherwise be a violation," or "breach," of both the "Settlement Agreement and the Protective Order," *id.* at 7–8; *see also* Def.'s Supp'l Br. in Opp'n to Mot. 6–9. It also asserts that, if the attorneys who represented Plaintiffs in *Crawford* cannot adequately represent Plaintiffs in *Lord* without "violating" the Settlement Agreement and Protective Order in *Crawford*, then those attorneys have a conflict of interest and "they must withdraw" from the *Lord* litigation. Def.'s Supp'l Br. in Opp'n to Mot. 8 (citing Va. R. Prof'l Conduct 1.7(a)).

I held a hearing on the Motion in September 2021. ECF No. 154. At the hearing, counsel for the *Lord* Plaintiffs reiterated that he and his new co-counsel did not want to access, review, or use any of the underlying confidential materials that Senex produced during pretrial discovery in *Crawford.* Indeed, he destroyed Confidential Materials and Confidential-AEO Materials as required by the stipulated Protective Order. *See* Prot. Order ¶ 13. Rather, counsel wanted to share his recollection or mental impressions of what he learned from materials that Senex designated "confidential" in *Crawford*, which included "all information regarding [Senex's] business practices[.]" Br. in Supp. of Mot. ¶ 2. Plaintiffs' counsel further explained that they were not seeking discovery in *Lord* at that time, but that being able to "speak candidly" with his co-counsel about the confidential information he learned from discovery in *Crawford* would allow Plaintiffs' legal team in *Lord* to draft more effective discovery requests and generally be more

efficient while preparing that case for trial. Senex's counsel agreed that we could not expect Plaintiffs' counsel to simply forget what he remembered about the confidential discovery materials produced in *Crawford*, but he again argued that allowing Plaintiffs' counsel to discuss any "confidential information" with his new co-counsel in *Lord* would violate both the Settlement Agreement and the Protective Order in this case. *See also* Def.'s Supp'l Br. in Opp'n to Mot. 8 ("[T]he Proposed Intervenors are not actually seeking discovery material [that is] prohibited from disclosure by the Protective Order and Settlement Agreement. In reality, Proposed Intervenors' counsel are requesting relief to speak with co-counsel about confidential material from *Crawford*, an act prohibited by the Settlement Agreement."). In response, Plaintiffs' counsel explained that he did not want to discuss with his new co-counsel the content of any "settlement negotiations" or "terms" included in the Settlement Agreement & Release, which are protected from disclosure under the Agreement itself. *See* Ex. 1, at 3 ¶ 1.F. Rather, he merely wanted to share his mental impressions of confidential business materials that Senex produced during pretrial discovery, well before the *Crawford* parities and attorneys executed the Settlement Agreement & Release. Senex's Counsel also argued that, to the extent the underlying confidential materials were relevant to the claims or defenses in *Lord*, Plaintiffs' attorneys could ask Senex to produce those materials again during discovery in that case. *See* Prot. Order. ¶ 5.

Finally, counsel for the *Lord* Plaintiffs and Senex agreed that this "Motion to Intervene" is necessary only because some of the attorneys who represent Plaintiffs in *Lord* were not previously counsel of record for Plaintiffs in *Crawford.* If Plaintiffs' legal teams in both cases were identical, then each Plaintiffs' attorney in *Lord* would have been entitled to review the confidential materials that Senex produced in *Crawford*, and, consistent with the terms of the stipulated Protective Order, those attorneys could discuss with co-counsel their recollections or

mental impressions of information derived from those confidential materials while preparing the *Lord* case for trial. Nonetheless, Senex insisted that the *Lord* Plaintiffs chose these attorneys to represent them knowing they were bound by the Protective Order in *Crawford* and that Senex had no obligation to help the *Lord* Plaintiffs litigate their case more efficiently. *See* Def.'s Br. in Opp'n to Mot. 1–3, 7–8; Def.'s Supp'l Br. in Opp'n to Mot. 2, 6–8 & n.3

II. Discussion

The *Lord* Plaintiffs assert that their requested relief from the Protective Order in *Crawford* is authorized under Rule 24(b), which allows the court to permit a non-party's intervention in litigation, *see* Fed. R. Civ. P. 24(b)(1)(B), or under Rule 60(b)(6), which allows the court, "[o]n motion and just terms," to "relieve a party or its legal representative from a final judgment, order, or proceeding" for any extraordinary "reason that justifies relief," Fed. R. Civ. P. 60(b)(6); *see DePaolo v. Wade*, No. 7:11cv198, 2015 WL 4164833, at *3 (W.D. Va. July 9, 2015) (Urbanski, J.) ("Rule 60(b)(6) applies to 'extraordinary' circumstances.") (citing *Ackermann v. United States*, 340 U.S. 193, 202 (1950)). Although I do not find that Rule 60 allows the requested relief, I do find that the *Lord* Plaintiffs' request is procedurally proper under Rule 24. *See, e.g.*, *Public Citizen*, 858 F.2d at 783–85 (collecting cases). In *Public Citizen*, the First Circuit Court of Appeals, interpreting Rule 24, agreed with the approach of the "Fifth Circuit[, which] has previously held that intervention is '*the* procedurally correct course' for third-party challengers to protective orders." 858 F.2d at 783 (quoting *In re Beef Indus. Antitrust Litig.*, 589 F.2d 786, 789 (5th Cir. 1979)). The court noted "that postjudgment intervention is not altogether rare" and that numerous other courts of appeals "have allowed third parties to intervene in cases" that had been closed for several years. *Id.* at 785.

The *Lord* Plaintiffs' ability to intervene to seek modification of the *Crawford* Protective Order finds further support in that Order itself. *See JTH Tax, Inc.*, 359 F.3d at 705 ("[D]istrict courts are in the best position to interpret their own orders."). Plaintiffs argue the Court can modify the *Crawford* Protective Order because, by its own terms, the "Order shall remain binding after the conclusion of this case unless otherwise ordered by the Court, and the Court shall retain jurisdiction overall all parties bound [there]by for the purposes of enforcing this Order," Prot. Order ¶ 14; *see* Supp'l Br. in Supp. of Mot. 4. Separately, they argue that federal district courts have "inherent power to modify discovery-related protective orders, even after judgment, when circumstances justify." Supp'l Br. in Supp. of Mot. 2–3 (quoting *Public Citizen*, 858 F.2d at 782); *see generally Public Citizen*, 858 F.2d at 782 ("During the pendency of the protective order, including times after judgment, the order acted as an injunction, setting forth strict limitations on the parties' use of discovery materials. In support of this 'injunction,' the district court necessarily had the power to enforce the order, at any point while the order was in effect, including periods after judgment. . . . Correlative with this power to enforce, the district court necessarily also retained power to modify the protective order in light of changed circumstances."). Senex responds that the *Lord* Plaintiffs cannot rely on paragraph 14 because it says the Court "shall retain jurisdiction . . . for the purposes of *enforcing* this Order," Prot. Order ¶ 14 (emphasis added), whereas the *Lord* Plaintiffs want a ruling "modifying" the Order. Def.'s Supp'l Br. in Opp'n 5.

The stipulated Protective Order's text unambiguously empowers this Court to issue an Order allowing the attorneys who are counsel of record for Plaintiffs both in *Crawford* and in *Lord* to share with the other Plaintiffs' attorneys in *Lord* their mental impressions and recollections of information derived from materials that Defendant Senex Law designated

"Confidential" under that Order and produced during pretrial discovery in *Crawford*. Prot. Order ¶¶ 4, 6, 14; *see JTH Tax, Inc.*, 359 F.3d at 705. First, the parties agreed that the Protective Order would "remain binding after the conclusion of this case *unless otherwise ordered* by the Court," Prot. Order ¶ 14 (emphasis added), and that the Court retained jurisdiction "for purposes of enforcing" its terms, *id.* The Protective Order is still in effect even though this case was closed in December 2018. Second, the Court's power to enforce the Protective Order necessarily includes the power to interpret its terms, *see Scott v. Clarke*, 355 F. Supp. 3d 472, 490, 503 (W.D. Va. 2019), and "to modify the protective order in light of changed circumstances," *Public Citizen*, 858 F.2d at 782.

Third, the Protective Order's text and structure make clear that the *default* rule against "disclosing" confidential materials, Prot. Order ¶ 6, and any "information derived therefrom," was *not* intended to be absolute. Paragraph 6 explicitly allows the receiving party to disclose such materials *with* "prior written permission from the designating party *or* an order by the Court." *Id.* If the designating party consents or the Court so orders, then confidential materials and information derived therefrom may be "disclosed to a[] person other than" attorneys of record and their support staff who worked on the *Crawford* case, *id.*, including any time "after the conclusion of the case" so long as the Protective Order remains in effect, *id.* ¶ 14. *Cf. Scott*, 355 F. Supp. 3d at 503 ("[W]hen, as here, a contract is not ambiguous, its meaning is a question of law for the Court to decide."). Thus, the Protective Order itself authorizes this Court to grant the *Lord* Plaintiffs' requested order.

Fourth, Senex's arguments relating to the Settlement Agreement's confidentially provision, *see* Ex. 1, at 3 ¶ 1.F, are not persuasive. The Settlement Agreement & Release is a private contract between the *Crawford* parties. *E.g.*, Ex. 1, at 4–5 (consideration, choice of law,

severability, and merger clauses); *see Byrum v. Bear Inv. Co.*, 936 F.2d 173, 175 (4th Cir. 1991); *Scott*, 355 F. Supp. 3d at 493–94 & n.16 (W.D. Va. 2019). The terms of that contract do not affect this Court's independent authority to interpret, modify, and/or enforce its own Protective Order entered much earlier in this litigation, Prot. Order ¶¶ 6, 9, 14; *Public Citizen*, 858 F.2d at 782–83. This Memorandum Opinion & Order interprets and applies the terms of the *Crawford* stipulated Protective Order to the facts presented by the *Lord* Plaintiffs' motion and supporting arguments. This decision does not require the Court to consider any person's or party's rights or responsibilities under the Settlement Agreement & Release, and nothing in this Memorandum Opinion & Order shall be construed as interpreting that document.

Finally, the Court finds good cause to issue a narrow Order allowing the attorneys who are counsel of record for Plaintiffs both in *Crawford* and in *Lord* to share with the other Plaintiffs' attorneys in *Lord* their recollections and mental impressions of information derived from materials that Defendant Senex Law designated "Confidential" under the stipulated Protective Order and produced during pretrial discovery in *Crawford*. Prot. Order ¶¶ 4, 6; *see* Fed. R. Civ. P. 1 ("These rules . . . . should be construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding."); *Hopei Garments (Hong Kong), Ltd. v. Oslo Trading Co., Inc.*, No. 87 CV 932, 1988 WL 25139, at *3 (S.D.N.Y. Mar. 8, 1988) ("There is a 'duty imposed upon counsel to deal fairly and sincerely with the court and opposing counsel so as to conserve the time and expense of all, and that actions may be litigated in an orderly manner.'" (quoting *Basso v. Utah Power & Light Co.*, 495 F.2d 906, 910 n.1 (10th Cir. 1974)). Senex Law does not object to Plaintiffs' counsel from *Crawford* using in the *Lord* case their recollections and mental impressions of the confidential materials from *Crawford*; rather, Senex Law objects to Plaintiffs'

counsel sharing their recollections and mental impressions with co-counsel in *Lord*. Other than asserting a general unfairness, Senex Law has not identified any harm that it will suffer from Plaintiffs' counsel in *Lord* being able to confer freely about their recollections and mental impressions. Since entry of the Protective Order, and the closing of the *Crawford* case, Plaintiffs' counsel from *Crawford* have initiated different litigation against Senex Law, and they seek to confer fully with their co-counsel in *Lord*. Their motion does not seek to use the actual documents produced in *Crawford*, and I do not address that issue here. Instead, I merely find that the stipulated Protective Order does not prohibit Plaintiffs' counsel in *Crawford* from using or sharing their mental impressions and recollections of "confidential" materials produced in that case under the Protective Order with their co-counsel in *Lord*.

## III. Conclusion

For the foregoing reasons, the *Lord* Plaintiffs' "Motion to Intervene for Purposes of Partial Relief from Protective Order," ECF No. 140, is **GRANTED** to the extent consistent with this Memorandum Opinion & Order. Attorneys who are counsel of record for Plaintiffs both in *Crawford* and in *Lord* may, consistent with paragraphs 4, 6, and 14 of the Protective Order, ECF No. 70, share with other Plaintiffs' attorneys in *Lord* their recollections and mental impressions of information derived from materials that Defendant Senex Law designated "confidential" under the Protective Order and produced during pretrial discovery in this case. This Order does not authorize the distribution or use of the underlying "Confidential Materials" or "Confidential-AEO Materials" that Senex previously produced in pretrial discovery, *see* Prot. Order ¶¶ 4–5, 6, 9, or of any written "summaries, extracts, compilations, notes, or other attorney work product containing Confidential Materials and/or Confidential-AEO Materials (with the exception of

drafts of pleadings filed with the Court)," that Plaintiffs' counsel returned to Senex or destroyed after the conclusion of the *Crawford* case, *id.* ¶ 13.

**IT IS SO ORDERED**

The Clerk is directed to send certified copies of this Memorandum Opinion & Order to the parties in *Crawford* and to counsel for Intervenors.

ENTERED: March 21, 2022

Joel C. Hoppe
United States Magistrate Judge